**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | | |
|---|---|---|---|
| **IN RE:** | ) | | |
| | ) | | |
| **TRAILER SOURCE, INC.** | ) | | |
| | ) | | |
| **Debtor.** | ) | **Case Nos.** | **3:06-0573** |
| | ) | | **3:06-0584** |
| **HYUNDAI TRANSLEAD, INC.** | ) | | **3:06-0589** |
| | ) | | **3:06-0592** |
| **Appellant** | ) | | **3:06-0644** |
| **v.** | ) | | **Judge Trauger** |
| | ) | | |
| **JACKSON TRUCK & TRAILER** | ) | | **Consolidated Appeals from** |
| **REPAIR, INC., JAMES A. HARRELL,** | ) | | **Case No. 05-00148-MH3-7** |
| **RALEIGH J. WILLIAMS, and MARK** | ) | | **Judge Marian F. Harrison** |
| **LAZARUS** | ) | | |
| | ) | | |
| **and** | ) | | |
| | ) | | |
| **SAMUEL K. CROCKER, TRUSTEE** | ) | | |
| | ) | | |
| **Appellees** | ) | | |

## MEMORANDUM

This is a consolidated appeal by Hyundai Translead, Inc. from five final judgments of the

United States Bankruptcy Court for the Middle District of Tennessee. Hyundai appeals (1) an

Order granting Approval of Compromise and Settlement of Claims, (2) an Order granting a

Motion for Compromise and Settlement of Claims[1], (3) an Order denying Hyundai derivative

standing to assert those claims, (4) an Order denying Hyundai's Motion to Reconsider and for

Other Relief, and (5) an Order denying a Motion for Relief from Stay. For the reasons expressed

---

[1]This order was a duplicate settlement order and was later rescinded by the Bankruptcy
Court. It will be analyzed in conjunction with the first Order granting Approval of Compromise
and Settlement.

1

herein, the court will reverse the orders granting approval for the trustee's compromise and settlement and the order denying Hyundai derivative standing to assert its claims and—for procedural reasons—will affirm the order denying Hyundai's motion to reconsider. In addition, the court will reverse the order denying Hyundai's motion for relief from stay.

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Hyundai Translead, Inc. ("Hyundai"), a manufacturer of semi-truck trailers, sold a quantity of trailers to Southern Trailer and Equipment Sales, Inc. ("Southern Trailer") in 2000. Southern Trailer is a trailer dealership in which appellees James Harrell, Raleigh Williams, and Mark Lazarus ("Harrell, Williams and Lazarus") own a majority interest. In addition, Harrell, Williams and Lazarus own a majority interest in at least two other trailer dealerships: Jackson Truck & Trailer Repair, Inc. ("JT&T"), and the debtor, Trailer Source, Inc. ("Trailer Source").

In 2002, Hyundai commenced a civil action in the Superior Court of San Diego County, California against Southern Trailer, JT&T, Trailer Source, and Harrell, Williams and Lazarus, alleging that it had delivered in excess of $44 million in trailers to Southern Trailer, but had only received payment in the amount of $26 million. Among other legal theories, Hyundai alleged that fraudulent conveyances had taken place between Southern Trailer and the other trailer dealerships, whereby trailers that otherwise could have satisfied Southern Trailer's debt to Hyundai had been transferred. In August, 2002, Hyundai entered into a settlement with all defendants in the California action, pursuant to which Trailer Source and Southern Trailer agreed to a schedule for payment of the $18 million debt. In addition, Hyundai became a secured creditor in both Trailer Source and Southern Trailer. Under the agreement, Trailer Source was to deposit business proceeds into a "lock box" to secure that payment would be made.

2

In October 2003, Trailer Source, the debtor, defaulted under the terms of the California settlement agreement. On June 30, 2004, Hyundai filed an action in the United States District Court for the Middle District of Tennessee alleging that JT&T, Harrell, Williams and Lazarus had set up a scheme whereby trailers and cash were transferred fraudulently from both Trailer Source and Southern Trailer to JT&T, depriving Southern Trailer of the ability to make its scheduled payments to Hyundai.

On January 6, 2005, Hyundai filed an involuntary Chapter 7 bankruptcy petition against Trailer Source, and on February 14, 2005, an order of relief was entered. Samuel K. Crocker was appointed as trustee on February 18, 2005. Upon the bankruptcy filing, Mr. Crocker, as trustee, succeeded to many of the causes of action set forth in the district court complaint, namely, the causes of action against JT&T, Harrell, Williams and Lazarus, and other parties for fraudulent transfer.

On February 18, 2005, JT&T, Harrell, Williams and Lazarus moved the bankruptcy court to lift the automatic stay in order for the district court to rule on the pending motion for summary judgment in the district court action, but the parties withdrew the motion at a hearing conducted on May 2, 2006.

During this time, Hyundai contacted Mr. Crocker regarding the fraudulent transfer claims, requesting that he perform an investigation. Mr. Crocker proposed that he employ, at Hyundai's expense, Hyundai's own counsel to conduct the investigation. Soon thereafter, JT&T and the other appellants wrote to the trustee themselves, as creditors of the estate, notifying Mr. Crocker that Hyundai could not pursue the claims because it had a conflict of interest, arguing that the California settlement foreclosed Hyundai from recovering on many of the proposed

claims. Accordingly Mr. Crocker did not hire Hyundai's counsel to conduct the investigation and did not conduct any further investigation himself, except to read certain documents provided by Hyundai and to attend one deposition.

### A. The February 7, 2006 Hearing

On December 9, 2005, Hyundai moved for derivative standing to pursue the investigation and filing of the fraudulent transfer claims on behalf of the bankruptcy estate. Mr. Crocker neither opposed nor supported the motion; however, JT&T, Harrell, Williams and Lazarus did oppose the motion. On February 7, 2006, the bankruptcy court conducted a hearing on the motion. At the hearing, counsel for JT&T argued that Hyundai should not be able to pursue the action under derivative standing because it would be barred from recovery under *res judicata* and the Rooker-Feldman doctrine.

In addition, the court elicited testimony from Mr. Crocker, who stated that his hesitance to pursue the fraudulent transfer claims was due primarily to the lack of funds in the estate to pay for the investigation and litigation costs. Mr. Crocker stated that he could not retain counsel on a contingency fee basis and, when pressed for his reasoning, stated "the merits of the case was part of it. The economics was part of it." Mr. Crocker also alluded to the "weird situation with the district court." However, Mr. Crocker did not explain exactly what problems existed with the merits of the case, and the court made no inquiry into Mr. Crocker's misgivings. In addition, Mr. Crocker stated that he had attempted to sell the cause of action to Hyundai, but that Hyundai had not responded to the offer.

Counsel fo Hyundai explained that they did not buy the cause of action because they believed such a sale to be illegal in the Sixth Circuit. Additionally, counsel for Hyundai offered

4

to explain the merits of its fraudulent transfer claims, step-by-step, but the court did not take him up on the offer. Although the court did not make any direct inquiry into the underlying claim, it held, at the hearing, that Hyundai had failed to demonstrate a colorable claim under *Canadian Pac. Forest Prods., Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1446 (6th Cir. 1995). In addition, the court expressed misgivings as to whether derivative standing is ever proper in a Chapter 7 case.

On February 21, 2006, the bankruptcy court entered an order denying Hyundai derivative standing. Thereafter, Hyundai filed a timely proof of claim in the amount of $19,441,768, representing its secured interests in the debtor. As of yet, no party in interest has filed an objection to Hyundai's claim.

**B.     The March 28, 2006 Hearing**

On February 17, 2006, Hyundai filed a Motion for Relief from the Automatic Stay, or in the Alternative, to Dismiss the Chapter 7 Case. Later that same day, Mr. Crocker filed a Motion for Approval of Compromise and Settlement of the fraudulent transfer claims. On March 3, 2006, Hyundai filed a Motion to Reconsider or Amend, for New Trial, or to Alter or Amend Judgment, or, in the Alternative, for Relief from Judgment or Order, specifically requesting reconsideration of the order denying Hyundai derivative standing.

The bankruptcy court conducted hearings on these motions on March 28, 2006. At the hearing, Mr. Crocker testified that the fraudulent conveyance action was the only principal asset the debtor possessed and reiterated—without explaining the specific issues he believed the case faced on its merits—that no law firm other than counsel for Hyundai would take the action on a contingency fee basis. Mr. Crocker testified, consistent with his earlier testimony, that he had

first decided to hire Hyundai's counsel to pursue the claims but had changed course based on objections asserted by JT&T and that, next, he had tried to sell the cause of action to Hyundai for $25,000 but had received no response to his offer. Mr. Crocker testified that, shortly after the February 7, 2006 hearing, counsel for JT&T had offered to settle all fraudulent transfer claims for $50,000 and, considering the lack of funds to pursue the claims and Hyundai's inability to pursue them, he had accepted the offer.

On questioning by counsel for Hyundai, Mr. Crocker admitted that Hyundai had sent him thirty to forty boxes of documents purporting to demonstrate fraudulent transfer claims, that the boxes were in Mr. Crocker's possession, but that he had only read a few of the documents in them. He did testify that he had read the documents included in the pleadings and letters that Hyundai had filed. In addition, Mr. Crocker maintained that he was "not embarrassed."

Counsel for Hyundai pointed out that the trustee had not set forth any evidence as to the merits of the underlying case and stated that the court could not approve a motion to compromise without findings as to the merits. Counsel for Hyundai did not, however, offer its own analysis of the underling claims from its own investigation.

Counsel for JT&T pointed out that Mr. Crocker had read some documents and met with both parties before agreeing to the settlement and reiterated that Mr. Crocker had offered to sell the claim to Hyundai for $25,000, which offer Hyundai had refused. At this point, Hyundai stated that, under its reading of Sixth Circuit law, such a sale would be illegal but that, if counsel for JT&T would stipulate that it was legal, it would participate in a bidding war for the claim at that very moment. Counsel for JT&T refused to so stipulate.

After the close of proof, the court granted the Motion for Approval of Compromise and

Settlement and denied Hyundai's Motion to Reconsider as moot. In so ruling, the court relied heavily on Mr. Crocker's business judgment and, although the court did recite the proper factors to be considered, it did not make any independent findings as to the merits of the underlying case, the complexity and expense of the underlying litigation, the possible difficulties in collecting judgment, or any other factors. The court did not rule on Hyundai's motion for relief from the stay, and instead ordered Hyundai to submit a "motion" listing what collateral it held outside of the settled claims before ruling.

### C.      The May 2, 2006 Hearing

The bankruptcy court conducted a hearing on Hyundai's stay relief motion on May 2, 2006. At the hearing, counsel for Hyundai asserted that Hyundai held security interests in certain collateral irrespective of the settlement of the fraudulent transfer claims. For instance, Hyundai asserted that it had a security interest in accounts receivable that existed irrespective of the settlement of the fraudulent transfer claims. However, the court did not address the grounds for relief from stay under 11 U.S.C. § 362(d). Instead, concluding that all of Hyundai's security interests had been subsumed by the trustee's settlement, the court denied Hyundai's motion as moot.

On June 6, 2006, Hyundai appealed all five orders to this court for appellate review. This court has jurisdiction to review the orders under 28 U.S.C. § 158(a)(1).

7

<u>ANALYSIS</u>

**I.     The Settlement**

A bankruptcy court's order "authorizing the trustee in bankruptcy to enter into a compromise of the creditors' claims rests in the sound discretion of the bankruptcy judge." *Porter Drywall Co. Inc. v. Haven, Inc. (In re Haven, Inc.)*, 326 B.R. 901,at *1 (6th Cir. BAP 2005) (quoting *Mach. Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.)*, 313 F.2d 447, 449 (6th Cir. 1963). Accordingly, the court must not "disturb or set aside such a compromise unless it obviously achieves an unjust result as to amount to an abuse of discretion." *Id.* Generally, a court abuses its discretion "only when it relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 30 (6th Cir. 1988). However, in exercising discretion over a bankruptcy settlement, the Sixth Circuit has held that "the bankruptcy judge is charged with an affirmative obligation to apprise itself 'of all facts necessary to evaluate the settlement and make an informed and independent judgment' as to whether the compromise is fair and equitable." *Bard v. Sicherman (In re Bard)*, 49 Fed. Appx. 528, 530 (6th Cir. 2002) (quoting *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 162-63 (7th Cir. 1987).

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims . . . . The law favors compromise and not litigation for its own sake, . . . and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." *Fishell v. Soltrow (In re Fishell)*, 47 F.3d 1168 (Table) at *2 (quoting *In re A & C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert.*

8

*denied*, 479 U.S. 854 (1986).

In determining whether such ample consideration has taken place, the Supreme Court has declared that:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation.

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

In determining whether to approve a compromise, a bankruptcy court should consider the following factors: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Bard*, 49 Fed. Appx. at 530 (citing Drexel v. Loomis, 35 F.2d 800, 806 (8th Cir. 1929); *see also Cook v. Terlecky (In re Cook)*, 336 B.R. 600 (Table) at *3 (6th Cir. BAP 2006).

In reviewing these factors, the Sixth Circuit has adopted the Seventh Circuit's reasoning that "[a] bankruptcy judge need not hold a mini-trial or write an extensive opinion every time he approves or disapproves a settlement," and instead, "[t]he judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision, and set out the reasons for his decision. The judge may make either written or oral findings; form is not

9

important, so long as the findings show the reviewing court that the judge properly exercised his discretion." *Fishell*, 47 F.3d at *3 (quoting *In re Am. Reserve Corp.*, 841 F.2d at163); *see also Cook*, 336 B.R. 600 (Table) at *3.

Even further, "[a]lthough it is preferable that these matters be addressed in the Bankruptcy Court's opinion, '[i]f, indeed, the record contain[s] adequate facts to support the decision of the trial court to approve the proposed compromises, a reviewing court would be properly reluctant to attack that action solely because the court failed adequately to set forth its reasons or the evidence on which they were based.'" *Fishell*, 47 F.3d at *3 (quoting *TMT Trailer Ferry*, 390 U.S. at 437). Accordingly, an approved settlement should be reversed only where (1) the bankruptcy court has not set forth adequate findings and (2) the record does not otherwise contain solid facts supporting the decision. *Id*.

The Supreme Court's decision in *TMT Trailer Ferry* contains many similarities to the case at hand. In that case, the Court evaluated an approval for settlement order stating, "[i]t is the opinion expressed by the attorney for the trustee that no better compromises can be obtained for the debtor, that the prospect of material reduction in the amount of these claims does not warrant the extensive litigation that would otherwise be required, and that the prospect of recoveries beyond the amount of the claims . . . is too remote for serious consideration." 390 U.S. at 433. Despite the fact that the trustee had not "placed on the record any of the facts of his . . . investigation and never provided any explanation of why he had completely reversed field" on the underlying fraudulent transfer claims, the bankruptcy court had accepted his findings wholesale, without performing any inquiry of its own into the merits of the settled causes of action. *Id*. Citing "the perfunctory, almost offhand, manner in which the court accepted [the

10

trustee's] recommendation,"and the deficiency of evidence in the record in support of the trustee's conclusions, the Supreme Court reversed the approval of the settlement and remanded the case, due to the insufficiency of the record. *Id.* at 433-7; *see also Haven*, 326 B.R. at *4 (reversing an approval of compromise where the order "[did] not make any specific findings of fact," the court "made no oral findings of fact at the hearing," and the record did not contain adequate facts in support of the decision); *In re Am. Reserve Corp.*, 841 F.2d at 163 (reversing an approval of a settlement where "the record [was] replete with statements by the bankruptcy judge that the *trustee* considered factors such as expense and litigation risks, but [did] not contain any indication that the judge independently evaluated those or other factors").

The Supreme Court's specific criticism of the bankruptcy court's decision in *TMT Trailer Ferry* has applicability to the case at hand. The Court found "no explanation of how the strengths and weaknesses of the debtor's causes of action were evaluated or upon what grounds it was concluded that a settlement which allowed the creditor's claims in major part was 'fair and equitable.'" *Id.* at 434. Although the bankruptcy court stated "that the alternative to settlement was 'extensive litigation at heavy expense' and 'unnecessary delay,' there [was] no evidence that this conclusion was based upon an educated estimate of the complexity, expense, and likely duration of the litigation." *Id.* The Court found "[p]articularly noteworthy . . . the fact that, despite frequent requests for an investigation, and notwithstanding the fact that the available evidence pointed to probably valid claims . . . no investigation of these matters was ever undertaken or ordered by the trial court." *Id.* Accordingly, the Supreme Court found it "difficult to imagine how an informed and independent decision in favor of compromising the . . . claims . . . could have been reached on the present state of the record."

11

In the case at hand, the order granting approval for the settlement, although it did recite the correct factors for consideration, did not proceed to consider any of them. In its order, the bankruptcy court stated that "[t]he proposed settlement is in the best interests of the estate and creditors. This determination is based upon the sound business judgment of the Trustee and consideration of the various factors." The court proceeded to list all of the factors. Next, the court stated, "the Court's role is not to substitute its judgment for the judgment of the Trustee. Rather, the Court is required to determine whether the settlement falls below the lowest point in the range of reasonableness." Finally, the court stressed that the "Trustee is an experienced Chapter 7 Trustee" and that "[t]he Trustee articulated sound reasons for his decision to compromise and settle the estate's claims against the JT&T parties. Furthermore, the Trustee reviewed a number of documents . . . observed Hyundai's counsel's interview and questioning of Jeff Davis, principal of Trailer Source, Inc., and spoke on numerous occasions with Hyundai's counsel about the claims against the JT&T parties." The court did not make any of its own findings as to the relevant factors in the order.

Neither did the court consider the relevant factors at the March 28, 2006 hearing—though it did, again, recite them correctly. Nor do the transcripts from that hearing contain the Trustee's "articulated sound reasons" alluded to in the order, aside from the Trustee's testimony as to the lack of funds in the debtor to pay for the litigation. Although Mr. Crocker was quite forthright regarding his inability to investigate the claims and the fact that he had reviewed only a small portion of the documents provided to him by Hyundai pursuant to Hyundai's own investigation, the bankruptcy court nevertheless accorded Mr. Crocker's uninformed determination regarding the merits of the claims a level of deference that could hardly have been exceeded. In short, the

12

bankruptcy court did not set forth adequate findings, written or oral, in support of its ruling.

Therefore the inquiry shifts to whether or not the record itself contains solid facts supporting the bankruptcy court's decision. It does not. The record, if anything, supports the contention that valid fraudulent transfer claims exist and that Hyundai is not barred by its California settlement to pursue at least some of those claims.

As to the likelihood of success on the merits, Hyundai has produced a substantial amount of documentation in support of its claims. For instance, Hyundai has produced fourteen different invoices documenting the sale of 197 trailers from the debtor to JT&T, for a total amount of $1.4 million, with no record of any payments made to the debtor in return. Hyundai has produced records indicating that, during the period after the parties entered into the California settlement agreement, the debtor sold assets to JT&T, the proceeds of which were never deposited in the lock box—required by the California settlement—to be used for settlement payments to Hyundai. In addition, Hyundai has produced sworn testimony from Jeff Davis during which Davis admitted that, in January 2002 the three officers of both JT&T and Trailer Source—Jeff Davis, Raleigh Williams and James Harrell—voted to distribute to themselves funds in excess of $300,000 each from the debtor, treating the payments as loans which none of the officers have repaid. Hyundai has collected a substantial volume of financial records purporting to demonstrate fraudulent transactions occurring before, during, and after the parties entered into the California settlement. Accordingly, the court must conclude that the likelihood of success on the merits weighs strongly against approval of the settlement agreement.

As to complexity of expense and litigation, neither the bankruptcy court nor the trustee has performed any analysis or made any specific findings. However, the fact that the parties

13

have litigated these claims up to the point of summary judgment in the district court indicates that the cost of further litigation may not be prohibitive. Further, the fact that Hyundai has offered to fund the litigation expenses itself tilts this factor against approval of the settlement.

With regard to difficulties in collecting the judgment, and other relevant factors, the record is simply vacant. Neither the trustee nor JT&T has provided any evidence that collecting any potential judgment on the fraudulent transfer claims would be arduous, and the court did not make any inquiry of its own. Hyundai, as a creditor, may have difficulty collecting on those claims that arose before the date on which Hyundai and the debtor signed the California settlement. Of course, Hyundai's ultimate recovery will be based on its proof of claim on file in the bankruptcy court, to which no objection has yet been filed. In any event, the relevant inquiry is not whether Hyundai, an individual creditor, may recover funds from the debtor at a later date, but whether the debtor itself will have difficulty recovering those funds. The record simply does not demonstrate any such difficulty.

Additionally, the sheer amount of settlement—$50,000 in exchange for roughly $20 million in fraudulent transfer claims—weighs against the propriety of the bankruptcy court's order.

Accordingly, because the bankruptcy court has not set forth adequate findings, either written or oral, for its decision, and because the record does not contain solid facts supporting the decision, but rather, contains facts weighing against the settlement, the bankruptcy court's order approving settlement will be reversed.

14

## II.     Derivative Standing

With regard to the remaining orders, the traditional standard of review for bankruptcy appeals applies, under which the bankruptcy court's conclusions of law are reviewed *de novo*. *See, e.g., National City Bank v. Elliott (In re Elliott),* 214 B.R. 148 (6th Cir. BAP 1997) (citations omitted).  *De novo* review requires the court to review questions of law independent of the bankruptcy court's determination. *In re Schaffrath,* 214 B.R. 153, 154 (6th Cir. BAP 1997) (citation omitted).  The bankruptcy court's findings of fact, however, must be reviewed under the clearly erroneous standard.  *In re Laguna Assoc. Ltd Partnership*, 30 F.3d 734, 737 (6th Cir. 1994).

The Sixth Circuit has held that derivative standing should be granted where (1) demand has been made upon the trustee; (2) the trustee declined the demand; (3) there exists a colorable claim that would benefit the estate; and (4) the trustee's decision was unjustified.  *Canadian Pac. Forest Prods., Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1446 (6th Cir. 1995); *In re LTV Steel Co.*, 333 B.R. 397, 406 (Bankr. N.D. Ohio 2005).

### A.     The Continuing Validity of Derivative Standing in Chapter 7 Proceedings

As an initial matter, the court must address the appellees' argument that the Supreme Court's opinion in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 3 (2000) has put the very concept of derivative standing in a Chapter 7 case in jeopardy.  Under the court's reading of that opinion, it has done no such thing.  In *Hartford*, the Court construed language in 11 U.S.C. § 506(c), stating that "[t]he trustee may recover . . . costs and expenses of preserving or disposing of" the estate's property over and above secured claims covering the same assets as to include only trustees and not other bankruptcy parties.  *Id*. at 5.  The case did

15

not address the concept of derivative standing in either the Chapter 11 or Chapter 7 context. *Id.* In fact, as the appellees note, the Supreme Court specifically stated that its ruling did not apply to the validity "of allowing creditors or creditors' committees a derivative right to bring avoidance actions when the trustee refuses to do so, even though the applicable Code provisions . . . mention only the trustee." *Id.* at 13, n. 5.

The only plausible construction of the Supreme Court's language in *Hartford* is that the practice of allowing creditors derivative standing to pursue claims on behalf of the estate, as set forth in *Gibson Group*, 66 F.3d at 1438, is still valid. However, because *Gibson Group* dealt with a Chapter 11 bankruptcy proceeding, and because the Sixth Circuit has not addressed this issue with regard to a Chapter 7 proceeding since its opinion in *Automated Business Systems, Inc. v. William B. Tanner Co., Inc.*, 642 F.2d 200, 201 (6th Cir. 1981), a pre-code case, the appellees argue that the court should conclude that *Hartford* deprives creditors of the possibility of derivative standing in Chapter 7 cases, though not in Chapter 11 cases. That is a cognitive leap the court cannot take. *Hartford* declined to address the issue of derivative standing in either the Chapter 11 or Chapter 7 setting, and the appellees have provided the court no legal basis for making that distinction on its own.

The appellees urge the court, nevertheless, to hold that derivative standing should be limited to Chapter 11 cases on the basis of "practical considerations." Certainly, the court agrees that practical considerations sometimes weigh in favor of derivative standing in Chapter 11 actions, such as *Gibson Group* itself. However, there are also practical considerations weighing in favor of derivative standing in certain Chapter 7 actions. The present action—in which the debtor lacks the funds to pursue a fraudulent transfer action, perhaps for the very reason that

16

substantial assets have been fraudulently transferred out of the debtor—is a prime example of such practical considerations. *See, e.g., In re Godon, Inc.*, 275 B.R. 555, 558 (Bankr. E.D. Cal. 2002) (noting, in a Chapter 7 case, that "[i]t has been a settled feature of bankruptcy law since 1898 that creditors may recover property for the benefit of the estate"); *Duckor v. Spradling & Metzger v. Baum Trust* (In re P.R.T.C., Inc.), 177 F.3d 774, 781-82 (9th Cir. 1999) ("[I]t is a well-settled principle that avoidance powers may be assigned to someone other than the debtor or trustee . . . [and] that the principles . . . apply to both Chapter 7 and Chapter 11 cases.").

B.    **The Application of *Res Judicata* to the California Settlement**

Next, the court must address whether Hyundai is barred from obtaining derivative standing by the doctrine of *res judicata*. The appellees argue that the Eighth Circuit case of *Williams v. Marlar (In re Marlar)*, 267 F.3d 749, 752 (8th Cir. 2001), prohibits Hyundai from sharing in the proceeds of the fraudulent transfer action and, therefore, deprives Hyundai of exercising derivative standing over that action. The appellees are wrong on both counts.

*Marlar* involved a dispute over an interest in 712 acres of Arkansas farmland. *Id*. at 752-53. Two days before his marriage to Paula Davis, John Marlar conveyed his interest to his son Bradley, who waited to record the deed for roughly ten years, during his father's and Ms. Davis' divorce proceedings. *Id*. Ms. Davis filed suit in Arkansas state court to set aside the transfer, lost the case, and then filed an involuntary petition against Marlar under Chapter 7, during which the trustee filed an adversary complaint concerning the same conveyance. *Id*. The trustee's action went forward, and eventually the bankruptcy court granted summary judgment in favor of the trustee, voiding the transfer. *Id*. at 753. The Eighth Circuit affirmed this ruling but held that Ms. Davis' own bankruptcy claim could not be satisfied by the judgment, on the basis of *res*

17

*judicata* and Rooker-Feldman principles.

 *Marlar* and the present case are different in several important ways. First, Ms. Davis' bankruptcy claim was identical to her previously defeated Arkansas claim and, therefore, classic *res judicata* and Rooker-Feldman principles prohibited a second bite of the apple through Chapter 7. *Id.* In contrast, Hyundai's bankruptcy claim is not identical to the claims asserted in the California action; nor is it one that could have been brought in that action. In fact, Hyundai's claim seeks to enforce *the result* of the California action—the settlement entered into by Hyundai and the appellees—through the operation of the security interests in the debtor which were granted to Hyundai in that very agreement. It is unlikely that *res judicata* or Rooker-Feldman could deprive Hyundai of exercising those security interests through its claim, which is perhaps the reason that no objection has been filed to Hyundai's claim.

 Second, and even more importantly, *Marlar* did not overturn the bankruptcy court's decision in favor of the estate in the underlying avoidance claim, notwithstanding Ms. Davis' inability to recover the claims. *Id.* Instead, the *Marlar* decision affirmed the bankruptcy court's grant of summary judgment as to the avoidance claim and, in fact, stands for the proposition that such actions may go forward, notwithstanding issues regarding recovery for particular creditors. *Id.* In the present case, Hyundai is not the only creditor who stands to benefit from the fraudulent transfer claims and, therefore, any theoretical defenses that might be asserted against Hyundai's own claim for recovery does not bar Hyundai from pursuing recovery on behalf of the estate. *See also Coleman v. Community Trust Bank (In re Coleman)*, 426 F.3d 719, 725 (4th Cir. 2005) (holding, in a Chapter 11 proceeding, that a debtor's ability to avoid fraudulent transfers is not limited to the amount of money that the debtor may expect to personally recover as a result

18

of the avoidance).

### C.    The Application of the Gibson Group Factors

Finally the court will address the *Gibson Group* factors.  That demand was made upon the trustee and that the demand was refused is not under contention; therefore, the court must determine only (1) whether there exists a colorable claim that would benefit the estate, and (2) whether the trustee's decision not to pursue that claim was unjustified.

A colorable claim is "one which is plausible or 'not without merit.'" *In re LTV Steel Co., Inc.*, 333 B.R. 397, 406 (Bankr. N.D. Ohio 2005) (quoting *Jensen v. Schweiker*, 709 F.2d 1227, 1230 (8th Cir. 1983).  "The 'colorable claim' requirement is met if the committee has asserted claims for relief that on appropriate proof would allow a recovery."  *Id*.  "Courts have determined that a court need not conduct an evidentiary hearing, but must ensure that the claims do not 'lack any merit whatsoever.'" *Id.*, (quoting *Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233, 248 (5th Cir. 1988)); *see also In re iPCS, Inc.,* 297 B.R. 283, 291 (Bankr. D.Ga. 2003).

In *Gibson Group*, 66 F.3d at 1446, the Sixth Circuit found that a claim was "colorable" by examining the face of a valid complaint.  Likewise, the court finds that the complaint filed by Hyundai in the district court constitutes sufficient evidence of a valid claim that would benefit the estate if successful.  The bankruptcy court's determination that the district court complaint was insufficient and its unquestioning reliance on the trustee's testimony on this point—which did not, in fact, indicate that Hyundai lacked a colorable claim—was in clear error, and must be reversed.

In determining whether the trustee's inaction was unjustified, "the court must also

Case 3:06-cv-00573   Document 19   Filed 03/30/07   Page 19 of 23 PageID #: 1096

examine, on affidavit and other submission, by evidentiary hearing or otherwise, whether an action asserting such claim(s) is likely to benefit the . . . estate." *Id.* (quoting *In re STN Enterprises*, 779 F.2d 901, 905 (2d Cir. 1985)). This inquiry "will involve in the first instance not only a determination of probabilities of legal success and financial recovery in [the] event of success, but also a determination as to whether it would be preferable to appoint a trustee in lieu of the creditors committee to bring suit. . . ." *Id.* (quoting *STN Enterprises*, 779 F.2d at 901).

At the February 7, 2006, hearing Mr. Crocker was very forthright in stating that he was unable to pursue the fraudulent transfer claims—or personally investigate those claims—because the estate had no liquid assets to fund that pursuit. The bankruptcy code does not require that trustees themselves go bankrupt in performance of legal work for which they cannot be compensated, so Mr. Crocker's position is justified in the practical sense; however, it is unjustified for purposes of the *Gibson Group* analysis. That is, the court finds that the fraudulent transfer claims were likely to benefit the estate, although the estate could not afford to pay to pursue them. Because Hyundai is itself willing to fund the litigation of those claims, the estate's inability to do so should not foreclose the creditors from the potential benefits of the litigation, for those benefits are, potentially, great. Although the bankruptcy court did not directly address at the hearing whether the suit was in the best interest of the estate, the record indicates that the potential for recovery is considerable. Therefore, the court concludes that Hyundai has satisfied each of the *Gibson Group* factors and that derivative standing should be awarded. The bankruptcy court's order denying derivative standing will be reversed.

Because the court need not reach the merits of the bankruptcy court's order denying Hyundai's motion to reconsider, and because the bankruptcy court was correct in holding that

the settlement of the fraudulent transfer claims (which is now reversed) rendered that motion moot, the court will affirm that order.

## III.    Motion for Lift Stay

Hyundai moved to lift the automatic stay pursuant to 11 U.S.C. § 362(d).  Section 362(d) provides that the bankruptcy court shall provide relief from a stay under the following conditions:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if–
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).  Although Hyundai presented the court with ample evidence of security interests in the debtor, the bankruptcy court held that Hyundai's motion for lift stay was rendered moot by the trustee's settlement of the fraudulent transfer claims.  Because the trustee cannot have had authority to settle Hyundai's own secured interests in the debtor on behalf of the estate, the court finds that ruling to have been in error.  Hyundai's security interests in the debtor, granted by the California settlement agreement, exist apart from the success or failure of the fraudulent transfer claims that Hyundai has asserted on behalf of the estate.  The fraudulent transfer claims seek to void transfers made from the debtor to other parties, whereas Hyundai's security interests form the basis for Hyundai's claim against the debtor.  Hyundai's secured interest cannot have been rendered moot by the settlement of claims asserted on behalf of the estate.

Hyundai set forth the collateral in which it holds security interests in its Stay Relief Motion, consisting of: (a) existing and future accounts and all other receivables, (b) present and future documents, (c) existing and after acquired equipment, (d) existing and after acquired general intangibles, (e) existing and after acquired inventory, and (f) existing and after acquired lockbox and deposit accounts. Hyundai makes much of the fact that the bankruptcy court granted relief from the automatic stay in favor of AmSouth Bank, a senior lienholder, who held security interests in the same property as Hyundai. However, regardless of the court's decision as to AmSouth, it is Hyundai's interests in the collateral that must be analyzed in determining whether to lift the automatic stay under 11 U.S.C. § 362(d).

It is Hyundai's particular interests that must be addressed, but it is not Hyundai who bears the burden of proof on the issue, at least with regard to lack of adequate protection under § 362(d)(1). Rather, "[i]f a creditor files a complaint seeking relief from the stay under § 362(d), the burden of proof, or the risk of non-persuasion, is on the debtor for all issues except the issue of the debtor's equity in the property." *In re Timbers of Inwood Forest Associates, Ltd.*, 793 F.2d 1380, 1387 (5th Cir. 1986), *aff'd sub nom., United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates Ltd.*, 484 U.S. 365 (1988). Therefore, "in a proceeding arising under § 362(d)(1), the debtor must prove that the secured creditor's interest is adequately protected, or the automatic stay will lift." *Id*; *see also In re Dixie Shamrock Oil & Gas, Inc.*, 39 B.R. 115, 117 (Bankr. MD Tenn. 1984) ("In a hearing under § 362(d), the party opposing relief from the stay has the burden of proof on the issue of adequate protection.").

At the May 2, 2006 hearing on the motion to lift stay, neither the trustee, on behalf of the debtor, nor the appellants offered any evidence indicating that Hyundai's security interests are

adequately protected. On the contrary, it was the trustee's consistent testimony, in that hearing and in prior hearings, that the estate contained very little, if any, value. That being the case, it can hardly be said that Hyundai's interests are adequately protected. Therefore, to the extent that there is any collateral remaining in the debtor in which Hyundai has a security interest, stay must be lifted so that Hyundai may pursue those interests. Accordingly, the bankruptcy court's order denying Hyundai's motion for relief from the automatic stay will be reversed.

**CONCLUSION**

For the reasons stated herein, the Order granting Approval of Compromise and Settlement of Claims will be reversed, the Order granting a Motion for Compromise and Settlement of Claims will be reversed, the Order denying Hyundai Derivative Standing will be reversed, the Order denying Hyundai's Motion to Reconsider and for Other Relief will be affirmed, and the Order denying Motion for Relief from Stay will be reversed.


An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge