UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | | |
| TRAILER SOURCE, INC. | ) | | |
| | ) | | |
| Debtor. | ) | Case Nos. | 3:06-0573 |
| | ) | | 3:06-0584 |
| HYUNDAI TRANSLEAD, INC. | ) | | 3:06-0589 |
| | ) | | 3:06-0592 |
| Appellant | ) | | 3:06-0644 |
| v. | ) | | Judge Trauger |
| | ) | | |
| JACKSON TRUCK & TRAILER | ) | Consolidated Appeals from |
| REPAIR, INC., JAMES A. HARRELL, | ) | Case No. 05-00148-MH3-7 |
| RALEIGH J. WILLIAMS, and MARK | ) | Judge Marian F. Harrison |
| LAZARUS | ) | | |
| | ) | | |
| and | ) | | |
| | ) | | |
| SAMUEL K. CROCKER, TRUSTEE | ) | | |
| | ) | | |
| Appellees | ) | | |

## MEMORANDUM AND ORDER

This case comes before the court on a Motion to Certify Order for Appeal filed by the Appellees (Docket No. 22) to which the Appellant has responded (Docket No. 24). For the reasons cited herein, the Appellees' motion will be **GRANTED**.

On June 6, 2006, appellant Hyundai Translead, Inc. appealed five final judgments of the United States Bankruptcy Court for the Middle District of Tennessee to this court. Hyundai appealed (1) an Order granting Approval of Compromise and Settlement of Claims, (2) an Order

1

granting a Motion for Compromise and Settlement of Claims[1], (3) an Order denying Hyundai derivative standing to assert those claims, (4) an Order denying Hyundai's Motion to Reconsider and for Other Relief, and (5) an Order denying a Motion for Relief from Stay.

On March 30, 2007, the court issued an Order reversing the bankruptcy court's orders granting approval for the trustee's compromise and settlement and the order denying Hyundai derivative standing to assert its claims and—for procedural reasons—affirmed the order denying Hyundai's motion to reconsider. In addition, the court reversed the order denying Hyundai's motion for relief from stay. (Docket No. 19)

On April 9, 2007, the appellees moved to certify for appeal the court's March 30, 2007 Order. In their supporting brief, the appellees seek certification of the Order based on the following questions: (1) whether, in light of the Supreme Court's decision in *Hartford Underwriter Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000), derivative standing is available in bankruptcy cases filed under Chapter 7; (2) whether principles of *res judicata* bar Hyundai from exercising derivative standing; and (3) whether principles of *res judicata* should have prompted the court to approve the bankruptcy court's approval of the trustee's settlement.

An order "not otherwise appealable" may be nevertheless certified for an immediate appeal by the district court if the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). *See In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002)

---

[1] This order was a duplicate settlement order and was later rescinded by the Bankruptcy Court. It will be analyzed in conjunction with the first Order granting Approval of Compromise and Settlement.

2

("Review under § 1292(b) is granted sparingly and only in exceptional cases.") (citing *Kraus v. Bd. of County Rd. Comm'rs*, 364 F.2d 919, 922 (6th Cir. 1966)); *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir. 1974).

## I. Derivative Standing Under Chapter 7

Neither party disputes that the issue of Hyundai's standing to pursue avoidance actions is a controlling question of law. The court finds that, in addition, there exists substantial ground for difference of opinion as to the validity of derivative standing in Chapter 7 actions and that determination of this issue on appeal may materially advance the ultimate determination of the litigation.

The Sixth Circuit has traditionally adhered to the rule that, in bankruptcies filed under Chapter 7 as well as under Chapter 11, "a creditor who believes a suit should be commenced has the right to petition the Bankruptcy Court to compel the trustee to act, or for leave to prosecute the suit in the interests of the estate." *Automated Business Systems, Inc. v. William B. Tanner Co., Inc.*, 642 F.2d 200, 201 (6th Cir. 1981).

However, the appellees urge that the Supreme Court's opinion in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 3 (2000) places the availability of derivative standing in a Chapter 7 cases in jeopardy. In *Hartford*, the Court construed language in 11 U.S.C. § 506(c), stating that "'[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.'" *Id*. at 5 (quoting 11 U.S.C. § 506(c)). The case did not address the concept of derivative standing in either the Chapter 11 or Chapter 7 context. *Id*. In fact, in a footnote, the Supreme Court specifically stated that its ruling

3

did not apply to the validity "of allowing creditors or creditors' committees a derivative right to bring avoidance actions when the trustee refuses to do so, even though the applicable Code provisions . . . mention only the trustee." *Id*. at 13, n. 5.

Noting that the provisions granting standing to trustees to bring derivative suits in 11 U.S.C. §§ 544, 545, 547(b), 548(a) and 549(a) use identical language to the costs and expenses language at issue in *Hartford Underwriters*, some courts have held—notwithstanding the Court's specific exclusion of those sections in footnote five—that *Hartford Underwriters* calls into question the possibility of derivative standing for parties other than the trustee in both Chapter 11 and Chapter 7 settings. *See In re Fox*, 305 B.R. 912, 915 (B.A.P. 10th Cir. 2004) (holding that although "in a footnote *Hartford* recognizes that some courts have permitted creditors or committees to bring derivative suits" the same principles of interpretation should apply to derivative standing); *In re Baltimore Emergency Services II, Corp.*, 432 F.3d 557, 561 (4th Cir. 2005 (stating "[i]t is far from self-evident that the Bankruptcy Code permits creditor derivative standing" while declining to rule on the issue).

A greater number of circuits, consistent with footnote five of *Hartford Underwriters*, have held that bankruptcy courts in both Chapter 11 and Chapter 7 proceedings may grant parties other than the trustee derivative standing to pursue avoidance actions. *See In re Racing Services Inc.*, ---B.R.---, 2007 WL 704984 at *3-4 (B.A.P. 8th Cir. Mar. 9, 2007) (holding that, where creditors have properly moved for court permission, derivative standing could be available in a Chapter 7 proceeding); *In re Commodore Int'l Ltd.*, 262 F.3d 96, 98-100 (2d Cir. 2001) (holding, in an action joining a proceeding filed under Chapter 11 and a "Bahamian Court action . . . akin to a Chapter 7 bankruptcy proceeding," that derivative standing may be asserted by a creditor in

4

the event of an unjustified refusal to bring the action or where the creditor has obtained consent of the debtor or trustee); *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000) ("If a trustee unjustifiably refuses a demand to bring an action to enforce a colorable claim of a creditor, the creditor may obtain permission of the bankruptcy court to bring the action in place of, and in the name of, the trustee."); *C.f. In re Godon, Inc.*, 275 B.R. 555, 558 (Bankr. E.D. Cal. 2002) (noting, in a Chapter 7 case, that "[i]t has been a settled feature of bankruptcy law since 1898 that creditors may recover property for the benefit of the estate").

In *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, the Third Circuit Court of Appeals addressed the availability of derivative standing in the Chapter 11 setting. In an exhaustive opinion, the Third Circuit articulated numerous grounds in support of derivative standing in Chapter 11 proceedings. The *Cybergenics* court drew from a wide variety of sources, including the long history of derivative standing in bankruptcy proceedings, *Id*. at 569-572, interpretation of the relevant bankruptcy code provisions, *Id*. at 559-568, and policy considerations. *Id*. at 572-577. As part of its textual analysis, the Third Circuit noted that in Chapter 11 actions, unlike Chapter 7 actions, "trustees rarely exist," and so a denial of derivative standing could not rest on the "unique role" of the trustee. *Id*. at 17. The Third Circuit proceeded to scour bankruptcy code provisions granting rights to creditor committees, along with trustees, to take various actions, without noting any distinctions between Chapter 7 and Chapter 11 proceedings. Nor did the *Cybergenics* court note any distinctions between those two forms of bankruptcy in the sections of the opinion analyzing the historical and policy bases in favor of derivative standing. In fact, much of the court's reasoning—such as its statement that "the ability to confer derivative standing upon creditors' committees is a straightforward

5

application of bankruptcy courts' equitable powers"—applies equally well to the Chapter 7 setting.[2]

The Sixth Circuit addressed the continued availability of derivative standing post-*Hartford Underwriters* in *In re Gibson Group, Inc.*, 66 F.3d 1436, 1442-43, a case arising out of a Chapter 11 proceeding. In *Gibson*, the Sixth Circuit upheld the availability of derivative standing, basing that availability on the duties owed by the trustee or debtor-in-possession to the creditors. The Sixth Circuit reasoned that, although Chapter 7 trustees have an arguably *greater* duty to conserve and protect assets, Chapter 11 trustees and debtors-in-possession also have that duty. *Id.* at 1442. A failure to conserve those assets would result in an abuse of discretion—a breach of the trustee or debtor-in-possession's duty—which the court held would justify a creditor's derivative standing. *Id.* It is on this point that a close reading of *In re Gibson* bears fruit: although *In re Gibson* does draw a distinction between Chapter 7 and Chapter 11 proceedings, that distinction weighs *in favor of* derivative standing in Chapter 7 proceedings, and not against it.

The court in *Gibson* stated: "the maximization of the value of the estate is not necessarily the primary goal of a Chapter 11 reorganization as it would be in a Chapter 7 litigation . . . .

---

[2]In light of the *Cybergenics* opinion's exhaustive treatment of this issue, not relying on any distinction between the Chapter 11 and Chapter 7 settings, the court respectfully disagrees with the District of New Jersey's statement, in *In re Hannah*, 316 B.R. 57, 61 (D. N.J. 2004), a Chapter 13 case, that due to the "unique and defined role" of the trustee "much of the rationale relied upon by the *Cybergenics* court for holding that a committee of unsecured creditors has standing in a Chapter 11 case to bring an action under § 544(b) is not applicable in a Chapter 7 or 13 case." Arguably, the great weight of the *Cybergenics* decision applies equally well to a Chapter 7 case. *But see In re Pro Greens*, 297 B.R. 850, 856 (M.D. Fla. 2003) ("A plain reading of . . . the Code leaves no doubt that the power to prosecute fraudulent transfer actions is left solely to the trustee . . . . This is not to say that in a Chapter 11 case, a non-trustee may not attain derivative standing.")

6

*However*, this does not mean that the debtor-in-possession has no duty to conserve and protect the assets . . . . *Given the duties* of a Chapter 11 trustee or debtor-in-possession, a failure to bring an action to avoid a preferential or fraudulent transfer *can be an abuse of discretion*." *Id.* (emphasis added). Next, the Sixth Circuit stated that this abuse of discretion could be a basis for a valid exercise of derivative standing, stating, "perhaps the most important prerequisite to derivative standing is that the debtor-in-possession has abused its discretion." *Id.*

This rationale applies even more strongly in the Chapter 7 setting. In a Chapter 7 liquidation—where the maximization of the value of the estate is the primary goal—the trustee's duty to conserve and protect those assets is even stronger and, therefore, the failure to bring an action to protect those assets would amount to an even greater abuse of discretion. Because the the Sixth Circuit based the availability of derivative standing on potential abuses of discretion, *Gibson*, far from supporting the appellees' position, weighs in favor of derivative standing in the Chapter 7 setting.

Despite this court's interpretation of *Gibson*, the fact remains that the Sixth Circuit has not directly addressed the issue of derivative standing in a Chapter 7 proceeding since the Supreme Court's *Hartford Underwriters* decision. Because, in other jurisdictions, courts have held that *Hartford Underwriters* has foreclosed creditors from derivative standing to pursue avoidance actions in some settings (*see, e.g., In re Fox*, 305 B.R. at 915; *In re Baltimore Emergency Services II, Corp.*, 432 F.3d at 561) and because at least two district courts in other jurisdictions have held that derivative standing may be available in the Chapter 11 setting, though not in the Chapter 7 setting (*see In re Hannah*, 316 B.R. at 61; *In re Pro Greens*, 297 B.R. at 856) there exists substantial ground for difference of opinion on this issue. Additionally,

7

because standing is a threshold issue, its determination on appeal may materially advance the ultimate determination of the litigation. Therefore, on the basis of this issue, the court will grant the appellees' motion to certify the court's March 30, 2007 order for appeal.

### II.     *Res Judicata* and Derivative Standing

Additionally, the appellees argue that the issue of whether the doctrine of *res judicata* bars the appellant from exercising derivative standing necessitates certification for appeal. Although, as mentioned above, standing is a threshold issue, the court does not find that there is substantial ground for difference of opinion on the application of *res judicata* to bar standing in this case and would not grant the appellees' motion solely on that basis.

The appellees cite a case from the Eighth Circuit Court of Appeals, *Williams v. Marlar (In re Marlar)*, 267 F.3d 749, 752 (8th Cir. 2001), for the proposition that Hyundai's prior litigation regarding fraudulent transactions between the debtor and several related entities should bar Hyundai from exercising derivative standing over the avoidance actions at issue. As the court explained in its March 30, 2007 memorandum, *Marlar* does not do the work the appellees ask of it.

In *Marlar*, a Chapter 7 trustee filed an adversary complaint to avoid a conveyance that a creditor, Ms. Davis, had previously challenged—unsuccessfully—in an Arkansas state court. *Id*. at 752-53. The trustee's action went forward, and eventually the bankruptcy court granted summary judgment in favor of the trustee, voiding the transfer. *Id*. at 753. The Eighth Circuit affirmed this ruling but held that Ms. Davis' own bankruptcy claim could not be satisfied by the judgment, on the basis of *res judicata* and Rooker-Feldman principles.

Of primary importance to the issue at hand is the fact that, in *Marlar*, the court did not

8

reverse the trustee's action or hold that a creditor, on behalf of the estate, would have lacked standing to pursue the action. Instead, the *Marlar* court affirmed the bankruptcy court's decision and held that Ms. Davis' claim against the estate could not be satisfied by the proceeds of the action. *Id*. If the avoidance claims at issue in this case were identical to those raised in the California action, then the *Marlar* case might operate to preclude Hyundai from satisfying its claims *against the estate* with the proceeds of the proposed avoidance claims. However, it does not preclude Hyundai from obtaining derivative standing to pursue those claims *on behalf of the estate*.

Further, as the court noted in its March 30, 2007 Memorandum, the proposed avoidance claims do not appear to be identical to the claims raised in the California action but, instead, concern a substantial amount of activity occurring after the time that the parties settled that action. (Docket No. 19 at p. 13). Consistent with *Marlar*, Hyundai's preclusion from participating in any avoidance claims that do overlap with its California settlement—as opposed to claims that seek to enforce the terms of the settlement—should be determined at the time that Hyundai's claim against the estate is adjudicated. *C.f. Coleman v. Community Trust Bank (In re Coleman)*, 426 F.3d 719, 725 (4th Cir. 2005) (holding, in a Chapter 11 proceeding, that a debtor's ability to avoid fraudulent transfers is not limited to the amount of money that the debtor may expect to personally recover as a result of the avoidance).

### III. *Res Judicata* and the Settlement

Finally, the appellees urge that the March 30, 2007 Order should be certified for appeal to determine whether principles of *res judicata* should have prompted the court to uphold the bankruptcy court's approval of the trustee's settlement. The court does not find that the

9

application of *res judicata* to the trustee's settlement is a legal issue presenting a substantial ground for difference of opinion and would not grant the appellees' motion solely on that basis.[3]

The appellees argue that the court did not properly consider the preclusive effect of the Eighth Circuit's *Marlar* decision on Hyundai's ultimate ability to recover as a factor weighing in favor of the bankruptcy court's approval of the settlement. The appellees assert that "the *Marlar* analysis was material to the settlement by the Trustee" and that the *res judicata* issues discussed in *Marlar* are "frankly overwhelming in this case" because of their effects on (1) the complexity and expense of litigation, and (2) the paramount interest of the creditors.

The court disagrees with the appellees' assertions. *Marlar* does not speak directly on the bankruptcy court's approval of the settlement, although it does stand for the proposition that principles of *res judicata* preclude parties from ultimately recovering on prior adjudicated claims through bankruptcy. The bankruptcy court did not perform a "*Marlar* analysis" but instead accepted the appellees' and the trustee's word that Hyundai would likely be precluded from recovery, in spite of the fact that Hyundai had alleged fraudulent transfers occurring after the California action was settled.

---

[3] Nor does the court find the appellees' statement that "The Court's Opinion does not reflect that it found the Bankruptcy Court improperly applied the law or used an erroneous legal standard" (Docket No. 23 at p. 5) to be a faithful reading of the March 30, 2007 Memorandum. In fact, the court held that, although the bankruptcy court recited the correct legal standard, it did not apply the standard at all, constituting an improper application of the law. The March 30, 2007 Memorandum states, "[i]n the case at hand, the order granting approval for the settlement, although it did recite the correct factors for consideration, did not proceed to consider any of them." (Docket No. 19 at p. 14). In the next paragraph, this court goes on to say, "[n]either did the court consider the relevant factors at the March 28, 2006 hearing—though it did, again, recite them correctly." (*Id.*) Especially in light of the fact that, as the court discussed in its March 30, 2007 Memorandum, the facts in the record did not support the bankruptcy court's decision regarding the settlement, it should be very clear that the failure to apply the law at all constitutes an improper application.

10

As discussed above, *Marlar* does not limit the estate's ability to pursue avoidance actions. Instead, *Marlar* applied the doctrine of *res judicata* to limit a particular debtor's ability to recover from the estate, after the completion of the estate's avoidance action. 267 F.3d at 753. Therefore, any preclusive effect *Marlar* might have on Hyundai's ultimate recovery would only increase the "complexity and expense" of Hyundai's own claim against the estate, and not the avoidance actions themselves. Nor does *Marlar* affect the paramount interest of the creditors in the way that the appellees suggest. At most, *Marlar* might be said to limit Hyundai's potential recovery from the proceeds of the avoidance actions. But Hyundai, a creditor, is willing to bear the risk that its own bankruptcy claim may not be able to be fully satisfied by the estate's recovery, and Hyundai's additional willingness to bear the costs of litigation seems substantially in favor of the interests of the remaining creditors. Moreover, because Hyundai presented substantial evidence of fraudulent transfer claims occurring after its settlement of the California action, it is far from certain that *res judicata* would bar Hyundai from a substantial recovery. The potential for recovery—$20 million in comparison to the $50,000 settlement—indicates that litigation may be in the best interest of the creditors. There is no substantial ground for difference of opinion as to whether *Marlar*, in and of itself, mandates approval of the trustee's settlement.

In addition, the appellees' *Marlar* argument is not a "controlling issue of law." A controlling issue of law is one that "could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d at 350; *see also In re Baker & Getty Fin. Servs., Inc. v. Nat'l Union Fire Ons. Co.*, 954 F.2d 1169, 1172 n. 8 (6th Cir. 1992). The appellees' *res judicata* concerns were one factor among many others to be considered in determining whether the trustee's settlement

11

should have been approved.  The Sixth Circuit has directed that, in reviewing trustees' settlements, the court should review the following factors:  "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Bard*, 49 Fed. Appx. at 530 (citing *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929); *see also Cook v. Terlecky (In re Cook)*, 336 B.R. 600 (Table) at *3 (6th Cir. BAP 2006).  The bankruptcy court did not set forth its findings on any of these issues, necessitating this court's review of the factual record.  *See Fishell v. Soltrow (In re Fishell)*, 47 F.3d 1168 at (6th Cir. 1995) (unreported table decision) *available at* 1995 WL 66622 at *3.

Even if the court were to have concluded that *Marlar* weighed in favor of settlement, the court would have been required to balance that weight with the other factors, listed above. Reviewing those factors involved an analysis of both law and fact, and a direct appeal of the court's decision, likewise, would require a review not only of the court's analysis of *Marlar*, but also its analysis of the factual record.  Accordingly, even if the court were to conclude that there was substantial ground for disagreement regarding the appellees' *Marlar* argument, the issue arising from that argument is not a controlling legal issue and would not, itself, justify an interlocutory appeal.

12

Case 3:06-cv-00573   Document 26   Filed 04/27/07   Page 12 of 13 PageID #: 1161

## CONCLUSION

For the reasons stated herein, the Motion to Certify Order for Appeal filed by the Appellees (Docket No. 22) is **GRANTED** on the basis that the Appellant's derivative standing to pursue the avoidance actions is a controlling question of law to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. The Appellees' Motion is denied as to the other proposed controlling questions of law.

It is so ordered.

Entered this 27th day of April 2007.

_____
ALETA A. TRAUGER
United States District Judge